IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JESSICA WINDHAM                                    PLAINTIFF

v.                              Civil Action No. 3:14-cv-250-TSL-JCG

CAROLYN W. COLVIN,                                 DEFENDANT
Acting Commissioner of Social Security

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Plaintiff Jessica Windham's Motion [11]

for Summary Judgement.  Pursuant to 42 U.S.C. § 405(g), Windham seeks review of

the administrative decision by the Commissioner of Social Security denying her

claim for a period of disability, disability insurance benefits, and supplemental

security income.  R. [12] 20.  The Commissioner has responded to Windham's

Motion by filing a Motion [13] for an Order Affirming the Decision of the

Commissioner. On November 17, 2014, Windham filed a Rebuttal [22].  The

undersigned submits this Report and Recommendations to the United States

District Judge and recommends that Windham's Motion [11] be denied and the

Commissioner's Motion [13] be granted.

## I.  BACKGROUND

A.    Administrative Proceedings

On July 27, 2012, Jessica Windham filed an application with the Social

Security Administration for a period of disability, disability insurance benefits, and

supplemental security income, asserting an onset of disability beginning July 24,

2012. Windham's application was denied both initially on April 16, 2013, and upon

reconsideration on July 16, 2013.  She timely filed a request for hearing before an Administrative Law Judge ("ALJ").

ALJ Lanier Williams conducted a video hearing on November 20, 2013, in Meridian, Mississippi. Windham and Donald Woodall, a vocational expert witness ("VE") testified at the hearing.  The ALJ issued an unfavorable decision on November 27, 2013, finding that from July 24, 2012, through the date of decision, Windham was not disabled within the meaning of the Social Security Act.  On January 1, 2014, Windham appealed the ALJ's decision and on February 7, 2014, the Appeals Council denied her request for review of the ALJ's decision, thereby rendering the ALJ's decision as the final decision of the Commissioner.  Having exhausted her administrative remedies, Windham timely commenced the present action by Complaint filed March 24, 2014, seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405 (g).

B.    Statement of Facts

Jessica Windham was born on June 2, 1987, and was 25 years of age at the time of the alleged disability onset date of July 24, 2012.   Windham is 67 inches tall and weighs approximately 118 pounds. R. [9], p. 20.   She completed two years of college and also obtained an insurance license. R. [9], pp. 24, 28. Windham was a member of the Air Force, beginning in February, 2007, and was honorably discharged in November, 2007. R. [9], p. 28.   Her past work experience includes food preparer, secretarial work, data entry, and insurance agent.  R. [9], pp. 29-30. Windham is separated and is the mother of one child. (R. 9, pp. 26, 32).  On July 12,

2012, Windham was diagnosed with Hodgkin lymphoma and thereafter underwent four cycles of chemotherapy. R. [9], p. 549.   The medical records reflect that Windham was also examined and treated for other medical complaints including: mid and lower back pain, decreased vision and eye pain, headaches, anxiety, insomnia, and panic attacks. R. [9] pp. 761-815.

C.    The ALJ's Findings

The ALJ utilized the five-step sequential process in evaluating and considering Windham's disability claims.   In step one, the ALJ determined that Windham had not engaged in substantial gainful work activity since July 24, 2012, the alleged onset date.   At step two, the ALJ concluded that Windham had "severe impairments" including: possible residuals from lymphoma and chemotherapy treatments and degenerative disc disease of the lumbar and thoracic spine.   R. [9], p. 115.   At step three, the ALJ determined that Windham's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. [9], p. 118.

The ALJ, in completing step four of the analysis, performed a residual functional capacity ("RFC") assessment.   The ALJ determined that Windham was incapable of performing her past relevant work yet she retained the RFC to perform sedentary work with having a sit/stand option that would allow her to sit for one hour at a time and then get up to walk around for 15 minutes at a time. The ALJ set forth the following additional limitations: "she should not climb ropes, scaffolds, ladders, and occasional bending, stooping, kneeling, crouching, and crawling.   She

-3-

should not work around moving machinery, unprotected heights, and her work needs to be indoors with no exposure to sun. She is limited to the performance of routine and repetitive tasks." R. [9], at pp. 118-19. The ALJ further determined that while Windham was not able to perform her past relevant sedentary work as a secretary as defined in the *Dictionary of Occupational Titles* ["*DOT*"], she remained capable of performing sedentary work comprised of routine, repetitive type tasks. The ALJ further refined the work to include minor postural, environmental, and mental non-exertional limitations. R. [9], at p. 125.

Windham was classified as a younger individual within the 18-44 age range, communicated in English and possessed at least a high school education. R. [9], at p. 125. As the ALJ determined that Windham was not disabled, the transferability of job skills was immaterial in his analysis. Upon consideration of these factors and the record as developed, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. [9], at p. 126. Accordingly, the ALJ concluded that Windham was not disabled from July 24, 2012, through November 27, 2013, the date of the administrative decision. R. [9], at 127.

## II. <u>ANALYSIS</u>

### A.   <u>Standard for Administrative Review</u>

A review of the Commissioner's denial of benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence in the record as a whole, and (2) whether the Commissioner applied the correct legal standards. *Perez*

*v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  Substantial evidence must be more than a mere scintilla, but it need not be a preponderance.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The Court's role is to scrutinize the entire record to ascertain whether substantial evidence supports the Commissioner's findings.  *Hollis v. Bowen,* 837 F.2d 1378, 1383 (5th Cir. 1988).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Id.*  This is so, even if the Court determines that the evidence could allow for a different finding.  *Strickland v. Harris,* 615 F.2d 1103, 1106 (5th Cir. 1980).

As summarized by the United States Court of Appeals for the Fifth Circuit,

> [t]he claimant has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572(a) and (b). The ALJ uses a five-step sequential process to evaluate claims of disability and decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.
>
> The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step.  Thus, the claimant must show first that she is no longer capable of performing her past relevant work.  20 C.F.R. § 404.1520(e). If the claimant satisfies this burden, then the Commissioner must show that the claimant is

capable of engaging in some type of alternative work that exists in the national economy. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding. *Id.*

*Newton v. Apfel*, 209 F.3d 448, 452–53 (5th Cir. 2000).

Conflicts in the evidence are to be resolved by the Commissioner, *Laffoon v. Califano,* 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence, *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)(citations omitted).

B.   Alleged Assignments of Error

1.   The ALJ's Determination of RFC is Unsupported by the Evidence

Windham asserts that numerous errors occurred during the ALJ's analysis of Step Five of the sequential evaluation, and as a result, his conclusions are not supported by substantial evidence.[1]  Specifically, Windham contends that the jobs cited by the VE were improper based on her RFC and the ALJ erred in citing the correct *DOT* section, and as a result, more than one incorrect hypothetical was posed by the ALJ to the VE.   She further contends that the ALJ failed to carry his burden in his determination that there exists a significant number of jobs in the economy that Windham is capable of performing given her residual functional

--------

[1]In her brief, Windham refers to the record containing numerous inaudible portions. However, the written findings prepared by the ALJ and reviewed during the appeals process do not note any issues discerning the hearing testimony.

-6-

capacity and accompanying limitations.

Respondent submits that "[e]ven if the ALJ had cited to the correct number in his decision, this Court has concluded that there is no requirement that a vocational expert cite to or rely upon the *DOT* in rendering his opinion [citation omitted] . . . remand is not necessary because '[p]rocedural perfection in administrative proceedings is not required.' *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)."  Mem. In Supp. of Mot. to Affirm [14], at p. 10.

The ALJ properly performed his function as the trier of fact and made affirmative, specific findings regarding Windham's subjective complaints in accord with SSR 96-7p. *See Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001)(citations omitted); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994). With regard to Windham's complaints and testimony, the ALJ determined in part as follows:

> The medical evidence of record fails to document clinical findings of any physician that suggest that claimant's impairments satisfy the severity requirements contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . the undersigned considered the claimant's medically determinable physical impairments, singly, and in combination, under each of the appropriate listings.
>
> * * *
>
> No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment. After reviewing the evidence, Disability Determination Service [DDS] medical examiners also concluded that no listing is met or equaled.

* * *

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. The objective medical evidence does not support the level of frequency, intensity, and limiting effects alleged by the claimant. In addition, reported daily activities do not support the degree of functional limitations alleged.

R. [9], at pp. 118-19.

The ALJ made specific findings as to the limitations and issues raised by Windham: "while the claimant does have some limiting effects, the intensity of her pain is simply not consistent with the objective medical evidence." R. [9] at p. 122-23.   He also noted that he gave "significant weight to the opinions of Dr. Saddler and Dr. Carol Kossman, as they both reviewed Windham's file and rendered expert opinions as to her medical conditions." *Id.* at p. 125.

The ALJ's credibility determination cannot reasonably be characterized as conclusory and is entitled to considerable deference because the ALJ was present and enjoyed the benefit of observing Windham's person and testimony at the hearing.  *Loya v. Heckler,* 707 F.2d 211, 215 (5th Cir. 1983).

A review of the record reveals that the ALJ applied the appropriate legal standards.  Further, the evidence supporting his credibility determination easily exceeds "more than a mere scintilla" of evidence.  *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).

2.      The ALJ Improperly Relied on the Testimony of the Vocational Expert

Windham next argues that because the testimony of the VE conflicted with

the regulations set forth in the *DOT*, the ALJ erred in failing to explain his decision

pursuant to SSR 00-4p.  Specifically, Windham maintains that the ALJ violated

Social Security Ruling 00-4p by not providing "a reasonable explanation for all

apparent conflicts between the testimony of the VE and the *DOT* before relying on

the conflicting opinion of the VE to find against Plaintiff."  Pl.'s Mem. [12], at p. 19.

She further asserts that this error was compounded by the ALJ's reliance on

responses to improper hypotheticals, which resulted in prejudice to her.  Windham

contends that because the VE's testimony conflicted with the *DOT*, the ALJ was

required to explain why he chose the VE's opinion over the *DOT* and because the

ALJ failed in this regard, this case must be remanded.

Respondent submits that a VE is able to compare all the unique

requirements of a specified job with the particular ailments a claimant suffers in

order to reach a reasoned conclusion whether the claimant can perform the specific

job.  "The broad generalizations in the *DOT* are why a vocational expert is best able

to determine whether a claimant can perform a particular job. Social Security

Ruling (SSR) 00–4p clarifies that the *DOT* lists the maximum requirements for a

position as it is generally performed, not the full range of requirements." SSR 004-p

(S.S.A. Dec. 4, 2000) 2000 WL 1898704, at *3.

Respondent relies on *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000), wherein

the Fifth Circuit determined that while the Dictionary of Occupational Titles (*DOT*) (4th ed., rev. 1991) ". . . simply gives a general description of the [job] duties involved," a vocational expert ". . . is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* at 145;  *see also Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986).

The *DOT* classifies occupations based upon General Education Development in mathematics, literacy, and reading.  *DOT* Appendix C, Section III, 1991 WL 688702.   Social Security Ruling 00-4p further provides in part as follows:

> When there is an apparent unresolved conflict between the VE or VS evidence and the *DOT*, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

*Id.* at *3.

"[T]he *DOT*, in its job definition, represents approximate maximum requirements for each position rather than the range." *Fenton v. Apfel*, 149 F.3d 907, 911 (8th Cir. 1998).   The Fifth Circuit has noted that "all kinds of implicit conflicts are possible and the categorical requirements listed in the *DOT* do not and cannot satisfactorily answer every such situation." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). Requiring a vocational expert's testimony to mirror a specific *DOT* section would undermine the purpose of obtaining the individualized determination provided by vocational expert testimony.   The ALJ is entitled to rely on a vocational expert's

knowledge of job requirements. *Nichols v. Astrue*, 269 F. App'x 526, 527 (5th Cir. 2008).

In the present case, the VE explained that the *DOT* characterized the jobs as light, but that, based on his observation and experience, the jobs were sedentary. The VE testified that based on his observations and experience, there were jobs that Windham could perform given the limitations present. These jobs included sedentary unskilled positions of ticket seller, cafeteria food prepper and small parts assembler. R. [9], at p. 50.

The ALJ, in his written findings, recognized Windham's abilities, RFC, and limitations in part as follows:

> However, the claimant's ability to perform all or substantially all of the requirements of this level of work [sedentary] has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: 1) ticket seller . . . 2) café food preparer . . . 3) small parts assembler.

R. [9], at p 126.

Windham also takes issue with the ALJ's findings regarding her specific vocational preparation ["SVP"] level: "the ALJ failed . . . to provide any basis for siding with the opinion of the VE over the *DOT* designations as to these contradictory opinions before relying upon the VE opinion to find against Plaintiff . . .."  Rebuttal [15], at p. 9.

The ALJ indeed recognized an inconsistency between the VE's testimony and the *DOT*, and addressed it in his findings.   The ALJ asked the VE <u>aside from the deviation between sedentary to light classification</u>, whether his testimony was consistent with the information contained in the *DOT*, and the VE responded that it was consistent.  R. [9], p. 51.  The ALJ's written determination and findings also acknowledged the inconsistency:

> Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. The vocational expert testified that the *DOT* classified the above jobs as light work; however, the vocational expert testified that based on his observation and experience, the jobs are sedentary.

> Pursuant to SSR 00-44P, the vocational expert's remaining testimony is consistent with the information contained in the Dictionary of Occupational Titles. The expert provided an explanation as to his knowledge that the named occupations would accommodate the sit-stand option in the residual functional capacity. Sit-stand options are not addressed in the Dictionary of Occupational Titles, to the extent this could be considered a "conflict" the undersigned finds the vocational expert's explanation as to the basis of his knowledge sufficient.

ALJ's Decision, R. [9], at pp. 126-27.

Once again, Windham's arguments center around the ALJ's reliance on the VE's testimony and opinions resulting from the hypothetical questions posed; however, the record does not reflect counsel setting forth any objections or any arguments against what the ALJ determined[2] as far as sedentary versus light

---

[2]The record does contain some exchanges between the ALJ and Windham's counsel regarding the extent and content of the hypotheticals; however, there were no objections noted.

distinctions.  Windham's counsel cross-examined the VE, but not regarding this

issue. R. [9], p. 52-54.

> A vocational expert is called to testify because of his familiarity with job
> requirements and working conditions. . . . 'The value of a vocational
> expert is that he is familiar with the specific requirements of a particular
> occupation, including working conditions and the attributes and skills
> needed.'  . . . [T]he vocational expert explained that he determined the
> availability of the receptionist, interview clerk, and cashier jobs in the
> national economy by referring to the Dictionary of Occupational Titles
> (*DOT*), in conjunction with additional sources.

*Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (quoting *Fields v. Bowen,* 805
F.2d 1168, 1170 (5th Cir.1986)).

Given that the ALJ posed hypotheticals to the VE that reasonably

incorporated the restrictions that the ALJ recognized, the ALJ properly relied on

the VE's testimony to deny Plaintiff's claim.  *Bowling v. Shalala,* 36 F.3d 431, 434

(5th Cir. 1994).

Finally, it remains questionable that a conflict was "apparent" because

Windham failed to raise the issue of a potential conflict between the *DOT* during

closing statements or otherwise.  *Abel v. Astrue,* 2011 WL 1099890 at *7 (S.D. Miss.

Mar. 2, 2011).  "[C]laimants should not be permitted to scan the record for implied

or unexplained conflicts between the specific testimony of an expert witness and the

voluminous provisions of the *DOT*, and then present that conflict as reversible

error, when the conflict was not deemed sufficient to merit adversarial development

in the administrative hearing."  *Carey v. Apfel,* 230 F.3d 131, 146-47 (5th Cir. 2000).

## III.  RECOMMENDATIONS

For the reasons stated, the undersigned is of the opinion that the Commissioner's decision is supported by substantial evidence and in accord with correct legal standards.  It is recommended that (1) Windham's [11] Motion for Summary Judgment be denied, and (2) the Commissioner's [13] Motion for an Order Affirming the Decision of the Commissioner be granted.

## IV.  NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge.  Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects.  The District Judge need not consider frivolous, conclusive, or general objections.  A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object.  *Douglass v. United*

*Servs. Automobile Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 2nd of July, 2015.

*s / John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE